**PANTONE, INC. and Lawrence Herbert, Plaintiffs,**

v.

**HERTZ AUTOVERMIETUNG GmbH and Hertz France, S.A., Defendants.**

**No. 77 Civ. 1828 (CMM).**

United States District Court, S.D. New York.

Oct. 5, 1983.

Bernstein, Obstfeld & Schwed, Lawson Bernstein, New York City, for plaintiffs; Wilfried Witthuhn, Walter, Conston & Schurtman, P.C., New York City, of counsel.

Mendes & Mount, Joan S. O'Brien, New York City, for defendants; Henrich Luebbert, New York City, of counsel.

METZNER, District Judge:

The court has completed a two-day hearing in which it heard testimony from experts presented by the respective parties as to the German law to be applied to the issues in this litigation. This hearing followed a three-day hearing on the applicable German law held in March 1981 before Judge Lowe. The court has read thirteen briefs and folders of translations of German law, and the transcript of the testimony previously heard by Judge Lowe.

Fed.R.Civ.P. 44.1 requires that the court determine foreign law as a matter of law. In reaching such a determination, the court must perforce make factual determinations as to the German law. What is the German law where there is disagreement between the experts as to the English translation of the German law? Which expert does one follow where there is disagreement as to

the German law either substantively or procedurally?

The two experts who testified were German lawyers who speak and read English and have a background in American law. Some of the translations were made by American translation services without any indicated knowledge of either German or American law. In many instances the translations were stilted and awkward and failed to make any legal sense.

The individual plaintiff, Lawrence Herbert, is the president and sole stockholder of the corporate plaintiff, Pantone, Inc. Hertz Germany and Hertz France are named as defendants, but counsel have stipulated for the purposes of this trial that they will be considered as one. The defendant will be Hertz Germany (Hertz).

On May 17, 1974, Herbert rented a car from Hertz in Frankfurt, Germany, and agreed to return the car in two days to a Hertz office in Paris. He used his American Express card which had been issued to "Lawrence Herbert, Pantone, Inc." On the following day, May 18, Herbert returned the car to a Hertz office in Paris, entered the mileage in the appropriate blocks on the printed rental agreement, left the keys in the car, and went into the Hertz office. Herbert alleges that no one was in the office, but a person in a Hertz uniform came from the parking area and Herbert gave him the rental documents and left.

The Hertz records did not reflect that the car was ever returned, and on June 17, 1974, Hertz considered the car to have been stolen. Hertz submitted a bill to American Express Company showing a rental period from May 17, 1974 to June 30, 1974. On July 2, Hertz sent a cablegram to Herbert in New City, New York, requesting information concerning the whereabouts of the car. Two days later on July 4, 1974, without having received any reply to the cablegram, Hertz filed a penal report with the West German police requesting that Herbert be prosecuted for misappropriation of the car. This form also provided space for informing the police if the car were located: "The car reported as misappropriated with

this information with the characteristic _____ could be found again and is again in our possession since _____."

Herbert claims that he answered the July 2 request from Hertz on July 11, and told them that the car had been left at the Hertz office near the Hotel Hilton on May 18. Hertz denies having received this communication. On August 4, Hertz was notified that the car had been found by the police in Paris. Hertz did not inform the German police of this fact.

On August 28, the German police issued a warrant to arrest Herbert which stated that Herbert had rented the car from Hertz, that he did not intend to pay for the use of the car or return it, and that "the car has not yet been returned to date."

The police record reflects that on September 4, a form notice was sent to Hertz reporting that the investigative procedure had been suspended because of lack of knowledge of Herbert's whereabouts. The form requested that Hertz to notify the police if it learned of Herbert's whereabouts. Hertz denies having received this communication as well.

On October 19, American Express notified Hertz that Pantone disputed the amount of the bill. On October 21 Hertz wrote to Herbert at Pantone that it had no record of the return of the automobile and that it had not received any reply to its cablegram of July 2. The letter added that the French police had found the car on August 7, and requested Herbert to furnish detailed information as to what happened when the car was checked in.

On November 1, Herbert replied to Hertz giving the requested information, but ignored the statement that Herbert had not replied to the cablegram of July 2. Herbert ended by stating that he would not pay more than a one-day rental charge plus mileage. On November 5, Hertz replied to Herbert at Pantone, stating that "there was a big mistake with Hertz Paris," "We are very sorry that all this happened and want to express our sincere apologies," and finally, "Now we hope that the matter was

cleared to your satisfaction and that this incident does not reflect upon our good business relations." Hertz did not inform the German police of this agreement with Herbert..

Two and a half years later, on January 21, 1977, Herbert arrived at the Cologne Airport in Germany, where he was promptly arrested on the previously issued warrant. He was searched at the airport and again after being transported to the jail in Cologne. Herbert claims that the police menaced him with guns and that he was treated in the jail as a common criminal. Upon the intervention of an attorney retained to represent Herbert, he was released from jail the following morning at 11:30 A.M.

Herbert seeks damages for pain and suffering incident to the arrest which he claims flow directly from the way Hertz handled this matter. This pain and suffering, he claims, includes a traumatic neurosis which has destroyed his self-image. Further, Herbert claims that he has lost his ability to manage Pantone effectively, and that, specifically, his fear of being in West Germany has resulted in his inability to market Pantone's Color Data System in Europe.

The second claim is presented by the corporate plaintiff Pantone for damages in contract. Under German law there are three statutory bases for recovery for breach of contract. See Palandt, Commentary on Civil Law, § 276 n. 7(a)(aa), at 301. The courts have developed additional bases for recovery encompassed in the concept of "positive Vertragsverletzung," or "pVV," relying on the German Civil Code, the Burgerliches Gesetzbuch ["BGB"] §§ 242, 276. PVV creates ancillary duties for the contracting parties, among which is the "duty to act during the course of the contractual relationship in such a fashion that the person, property and other legal interests of the other party are not injured." Palandt, § 242 n. 4B(b), at 202. Defendant's expert has conceded that Pantone may recover under pVV provided that Pantone was the contracting party for the rental of

the car and that Hertz was under a duty to notify the police of the resolution of the matter with Pantone and Herbert.

Pantone claims that the trauma suffered by plaintiff Herbert, its chief executive and chief operating officer, caused the failure of its European marketing efforts for its Color Data System. Herbert was unable to attend a scheduled meeting with representatives of Pantone's West German public relations and advertising firms on January 22, 1977, and because of his fears was unable to remain at Pantone's March, 1977, Frankfurt show for more than one day, or to remain in Germany for more than one day of a two-week show in Dusseldorf the following June. Pantone claims that Herbert's singular technical expertise and his status as chief executive officer of Pantone made him the only Pantone employee who could sell the system effectively.

■ There is no doubt that under German law plaintiffs' complaint on its face can successfully withstand a motion to dismiss.

We turn now to the defenses raised by Hertz. The first of these is known under German law as the right of error.

One who instigates legal proceedings later determined to be unfounded may not be held liable for instituting the action unless a deliberate unethical injury is inflicted by unfair means. Judgment of March 13, 1979, Bundesgerichtshof, Grosse Senate fur Zivilsachen ["BGHz"], 1979, 1979 BGH NJW 1351 [the "1351 case"]; Judgment of October 3, 1961, BGHz, 1961, 36 BGH 18, 1961 NJW 2254. Even negligence in instituting the proceedings will not vitiate the defense. The right of error rests on a policy that the public should be afforded easy access to the judicial system and not be deterred by the possibility of suit for instituting the proceedings. 1351 case.

■ I hold that German law sustains a defense of right of error to a claim for injury based on the filing by Hertz of the complaint with the police department. This is true notwithstanding the fact that the defendant filed the complaint without wait-

ing a reasonable time for an answer to its cablegram of July 2, 1974, inquiring as to where Herbert left the car.

■ Herbert also predicates his tort claim on the failure of Hertz to notify the police that the car had been found and the matter concluded according to Herbert's claim that the car had only been used by him for one day.

The policy considerations underlying the right of error defense are not applicable to this claim. The denial of the defense here will not discourage German litigants from seeking judicial relief. Hertz is charged with failure to notify the police of the information in its possession which could have aborted the criminal proceedings which it instigated.

The 1351 case furnishes the basis for this ruling. That case arose under BGB § 823, which provides liability when a person negligently or willfully, and unlawfully, injures another. In 1351 an attorney was held liable for continuing civil litigation to collect a debt after he had received payment from the debtor. The court stated that the right of error defense requires critical limitation:

> "It must cease at the point where the curtailment of his freedom of decision and action is not restricted to an unreasonable extent by the risk of liability. In the instant case this boundary was overstepped. For the requirement that he should note an easily checked notification that his legal proceedings have in the interim become unjustified and act accordingly does not constitute a serious encroachment on his right of access to legal process."

Under the spirit of that decision the German courts would hold on the facts of this case that to require Hertz to notify the authorities would "not constitute a serious encroachment on [its] right of access to legal process." I find that the instant case is not distinguishable from 1351 even though the latter involved a civil proceeding, while Hertz filed a criminal complaint.

While it is true that the German authorities had complete discretion as to whether the complaint should be followed up, Hertz was under an obligation to furnish the police with facts later acquired that Herbert may not in fact have misappropriated the car. Defendant's expert has testified that had Hertz notified the authorities of these facts, the prosecution would not have proceeded. Furthermore, the correspondence between Pantone and Hertz indicates that Hertz no longer considered Herbert an automobile thief.

Hertz's statement of misappropriation, and its request for prosecution of Herbert, put in motion the procedures for apprehension. Prosecution can only follow apprehension. Hertz must have been aware of its obligation since the very notification requesting prosecution contained places for Hertz to indicate that the car had been returned.

Defendant further attempts to distinguish the 1351 case on the basis that Hertz did not know that a warrant of arrest had been issued. It argues that in 1351 the lawyer was chargeable with knowledge of payment by the debtor and therefore should have discontinued the litigation.

It makes no difference whether Hertz knew or did not know of the issuance of the warrant since the duty imposed was to advise the police of the facts so that the latter could properly exercise their discretion as to the continuation of the proceedings.

Consequently, the defense of right of error is inapplicable to Herbert's tort claim for the failure to notify the police.

■ The parties do not dispute the facts concerning Hertz's charge that Pantone was not the contracting party and therefore cannot recover on its pVV claim. They do dispute the proper application of German law to the rental contract.

Pantone's credit card was imprinted on the rental contract to indicate the party to be charged. Herbert's name was placed on the contract as the renter of the vehicle. Obviously, a corporation cannot drive a car, only an individual can do that. Hertz checked Pantone's credit, and, contrary to its assertion that Pantone was only a guarantor of payment, it is clear that Pantone was the primary obligor.

Under German law one looks to the true intent of the parties, as evidenced by their acts in executing the contract, to determine the parties to the contract. BGB §§ 133, 164(1). The car was rented for use in Pantone's business. Hertz rented that car to Pantone, relying solely on Pantone to pay the cost.

Defendant relies on a case, Judgment of October 13, 1975, BGHz, 1975, 65 BGHz 213, which we will call the check case. That case is not helpful to Hertz because the face of the check did not indicate to the payee that the husband was to be liable for payment of the check. In the instant case, Pantone's name, with its account number, appears on the face of the document, and Hertz, in fact, checked Pantone's credit. Similarly, the second case relied on by Hertz, Judgment of January 27, 1975, BGHz, 1975, 1975 NJW 775, is not on point. That case stands for the proposition that the burden of proof in the instant case would be on Herbert to establish that he acted in the name of Pantone.

"Thus ... [Herbert] has to prove either that he expressly acted in the name of [Pantone] or that his intent to act as an agent was obvious under the circumstances."

Here the intent to act as agent "was obvious under the circumstances."

As defendant's expert has stated on the record, if Pantone is a proper party, then on the facts of this case it would be entitled to damages on the theory of pVV if Hertz had a duty to notify the police of the events which followed the initial complaint. I have held that on the facts of this case such a duty existed. Thus, on this claim, the only issue for the jury is the amount of damages to be awarded.

The parties agree that the question of contributory negligence exists in this litigation and that, under the German law, comparative negligence is a partial defense to both the tort and contract claims.

Defendant relies on a defense to the tort claim provided by the German law to the effect that an employer is not liable for the torts of its employees where the employer has properly selected and supervised

them. This, of course, raises an issue of fact to be submitted to the jury.

Finally, there has been discussion regarding the defense of disclaimer. The contract had a disclaimer clause which stated:

"Hertz cannot be held responsible for any damage, not covered by insurance, to a third person in connection with the operation of the rented vehicle, as well as the loss or damage to articles stored or left in the vehicle during the rental period, nor for any possible damage or inconvenience caused by the belated delivery of the vehicle, possible motor trouble or any other causes."

The experts were far apart in their statements as to the interpretation of this clause. They referred to cases which seem at odds to one another. Time has been given to the parties to submit additional material, which has just been received, and the court reserves decision on that question.

So ordered.